# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RHONDA K. WILCOX,
    Plaintiff

vs

Case No. 1:08-cv-109
(Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the
final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's
applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).
This matter is before the Court on Plaintiff's Statement of Errors (Doc. 6), the Commissioner's
response in opposition (Doc. 11), Plaintiff's Reply Brief (Doc. 12), the administrative record, and
the record as a whole.

## PROCEDURAL BACKGROUND

Plaintiff, Rhonda K. Wilcox, was born on March 24, 1954, and was 53 years old at
the time of the ALJ's decision. Plaintiff has a high school education (Tr. 88), and worked as a
construction laborer. (Tr. 88, 898). Plaintiff filed applications for DIB and SSI in January, 2002,
alleging disability beginning July 1, 1999, due to a back impairment and various mental
conditions. (Tr. 35, 63-65, 111, 467-69). An initial hearing was held on December 16, 2003,
before an Administrative Law Judge (ALJ), who determined that Plaintiff was not disabled. The
Appeals Counsel denied her request for review on March 5, 2005. (Tr. 6-8). Plaintiff sought

judicial review of the commissioner's decision. The Court remanded Plaintiff's claim for further proceedings and a new decision on January 23, 2007. *Wilcox v. Barnhart*, 1:05cv296. (filed May 4, 2005).

While Plaintiff's civil action was pending, Plaintiff filed another application for SSI on March 22, 2005 and February 22, 2006, alleging disability beginning July 1, 1999. (Tr. 626-32). Plaintiff's application was denied initially and upon reconsideration. (Tr. 605-07). A hearing was held before ALJ James I.K. Knapp (Tr. 879-903), who determined that Plaintiff was not disabled. (Tr. 515-59). The Appeals Council denied Plaintiff's request for review, (Tr. 504-07), and the ALJ's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, ALJ Knapp found that Plaintiff has the severe impairments of lumbar degenerative disc disease with moderate obesity, a generalized anxiety disorder, and recurrent major depression, (Tr. 534, 557), but that she did not have an impairment or combination of impairments that meets or equals the Listings. *Id.* ALJ Knapp described Plaintiff's Residual Functional Capacity as follows:

> The claimant lacks the residual functional capacity to: (1) lift more than 10 pounds frequently or 20 pounds occasionally; (2) stand or walk for more than 30 minutes at a time or more than six hours per day; (3) crawl, crouch, stoop, kneel, or climb stairs more than occasionally; (4) climb ladders or scaffolds; (5) work at unprotected heights or around moving machinery; (6) have any interpersonal contact with members of the general public; (7) have greater than occasional contact with co-workers or supervisors; (8) perform other than simple, repetitive tasks; or (9) do other than low stress work activity (i.e., no jobs involving fixed production quotas or otherwise involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

*Id.* ALJ Knapp then found that Plaintiff was unable to perform her past relevant work as a a insulation worker or construction worker. ALJ Knapp then used section 202.14 and 202.21 of

2

the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and

concluded that there is a significant number of jobs in the economy that Plaintiff was capable of

performing. (Tr. 535, 558). ALJ Knapp concluded that Plaintiff was not disabled and therefore

not entitled to benefits under the Act. (Id.).

## PLAINTIFF'S TESTIMONY AT THE HEARING

The ALJ fairly summarized Plaintiff's testimony at the December 16, 2003 hearing as

follows:

> [S]he stopped working in June 1999 due to panic attacks. She said she
> could not work now due to a combination of back pain and bipolar
> disorder. She had back surgery in September 2001, but she still had a
> constant burning pain in her low back. Prescribed pain medication
> (Oxycontin) provided about 50% pain relief. She also got pain shots every
> six months, which provided about 50% relief for two to three months after
> she had them. She took medication for stomach upset symptoms which
> controlled that problem.
>
> Claimant estimated that she could only stand or sit forty-five minutes each
> at a time, and lift no more than a gallon of milk.
>
> Claimant further testified that she had been treated for bipolar disorder and
> that her manic symptoms were under control. Her last manic phase was
> six months ago. She characterized her manic symptoms as having a panic
> attack. (Yet later in her testimony, she said she still had panic attacks two
> to three times a week that lasted two to three hours.) She said she still
> suffered from daily depression. She isolated herself when depressed; she
> described no other significant depressive symptom. Claimant said she had
> been seeing both a psychiatrist and psychologist on a regular basis for two
> years, and was also taking a variety of medications including Effexor,
> Seroquel, Abilify, and Lithium.
>
> Claimant, who lives with a friend, said she spent a typical day going to
> medical appointments (every other day), caring for her dogs, working on
> her stamp collection (about half an hour daily), talking to her roommate,
> and lying down. She cooked and helped clean up the dishes, but relied on

3

her roommate to do the other housework. She went shopping once a week. She went out visiting only when her mother came to get her. Her car broke down five months ago; before that she drove weekly. Claimant said she napped two hours during the day and still slept ten hours at night.

(Tr. 516-17; 540-41). The ALJ fairly summarized Plaintiff's testimony at the July 17, 2007 hearing as follows:

> [S]he still had a burning pain in her low back that extended down both her legs causing them to feel numb two or three times a week. She took Percocet four times daily which reduced her level of pain from a 10 to a 7. She had tried pain injections in the past, but they did not help. Her pain now was worse than at the time of the December 2003 hearing. However, she had lost 40 lbs. since then which had helped. She now weighed 204 lbs. at 5 ft. 2 in. in height.
>
> Claimant also said that her blood sugar levels got higher throughout the day due to diabetes mellitus (up to 164). When it got high in the afternoon she felt dizzy. She had also been diagnosed with sleep apnea since the last hearing, but had been using a C-PAP for a year and a half which controlled this problem. She was able to get six hours sleep at night. She took Neurontin for restless leg syndrome; she had these symptoms at night about three or four times a week.
>
> Claimant estimated that she could now walk twenty minutes at a time, but she still could only sit or stand each forty-five minutes at a time. She could lift at most a gallon of milk, but only for ten minutes.
>
> Claimant further testified that her depression was getting worse. She found it hard living alone; she had lived alone since May of this year (2007). She had crying spells every other day. She also had anxiety attacks that lasted up to two hours three times a week. She had tremors all the time. She was taking Abilify, Effexor, Oxepam, Topomax, and Lithium. These medications made her feel tired. She also had PTSD problems. She dreamed about sexual abuse as a child about once every three weeks.
>
> Claimant said that she prepared simple meals for herself and cleaned up her dishes, but her mother did her mopping, vacuuming, and laundry. Claimant went shopping every two weeks. She had given up her past hobby of stamp collecting. She no longer drove a car.

(Tr. 517-18; 541-42).

4

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389,401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental

5

impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the

6

physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520 ( C). Basic

work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the

ability to perform physical functions, the capacity for seeing and hearing, and the ability to use

judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R.

§404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation.

Rather, the severe impairment requirement is a threshold element which plaintiff must prove in

order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d

352, 357 (6th Cir. 1984). The severity requirement may be employed as an administrative

convenience to screen out claims that are totally groundless solely from a medical standpoint.

*Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be

considered non severe only if it is a "slight abnormality which has such minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work,

irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85,

90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's

decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d

966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.

*Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v.

*Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by

showing an inability to perform the relevant previous employment, the burden shifts to the

Commissioner to show that plaintiff can perform other substantial gainful employment and that

such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir.

7

1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson* v. *Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524,536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips* v. *Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger,* 512 F.2d

8

664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway* v. *Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v. *Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Nos* v. *Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley* v. *Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon* v. *Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical

9

impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.l520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiffs level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); *see Hogg* v. *Sullivan,* 987 F.2d 328,332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4);

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past

10

relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(c)-(f) and 416.920a(c)-(f).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at an administrative hearing. *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk* v. *Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan* v. *Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky* v. *Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones* v. *Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the

11

existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 6 at 2-4; Doc. 11 at 3-7) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns six errors in this case. First, she argues the ALJ failed to properly weigh the opinion of treating physician, Dr. Dornan. Plaintiff contends the limitations offered by Dr. Dornan would limit her to sedentary work and therefore she would be found disabled under Grid

12

Rule 201.14. Second, plaintiff contends the ALJ erred by giving more weight to the opinions of Drs. Wunder and Fritzhand, non-examining state agency physicians, than to the assessment of Dr. Wright, Plaintiff's treating physician. Third, Plaintiff argues the ALJ failed to properly weigh the opinion of treating psychiatrist, Dr. Hackett. Fourth, Plaintiff contends that the ALJ erred when he failed to explain how he arrived at his mental RFC for the period after 2003. Plaintiff's fifth argument is that the ALJ failed to consider Plaintiff's chronic complaints of pain and in assessing her credibility. Finally, Plaintiff contends the ALJ relied on an improper hypothetical to the VE in determining Plaintiff was not disabled.

Plaintiff contends that the ALJ's errors in these regards mandate a reversal of the ALJ's decision for an award of benefits. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

## I. MEDICAL SOURCE OPINIONS

A review of the ALJ's decisions reveal well-supported descriptions of the medical source opinions and records. (Tr. 518-22; 542-47). Contrary to Plaintiff's contentions, however, the ALJ provided sufficient information to show that he weighed these medical source opinions as the Regulations required.

The evaluation of Dr. Wright's opinion was the primary reason this case was remanded for further consideration in the prior action. (Tr. 566-91). The ALJ reported Dr. Wright's January 2002 opinion that Plaintiff could lift less than five pounds, that she could stand or walk for only 30 minutes a day, and that she could sit for 7.5 hours a day. Dr. Wright concluded that she was "unemployable." (Tr . 376- 77). In June 2002, Dr. Wright opined that plaintiff could lift

13

10 pounds, that she could stand or walk for less than two hours and that she could sit for less than two hours in a normal workday. (Tr. 370-73, 450). The ALJ then declined to accept Dr. Wright's opinions based on factors permitted by the Regulations. This appears in the ALJ finding that Dr. Wright's opinion was not supported by adequate objective findings and his opinion was contradicted by the more expert opinions of specialists, Plaintiff's neurosurgeon, Dr. West and examining physicians, Drs. Wunder and Fritzhand. (Tr. 530-31; 553-54). Dr. West performed lumbar laminectomy surgery on Plaintiff's lower back in September 2001. (Tr. 249-50). Dr. West reported that she recovered very well from surgery with good results and marked improvement of her pain symptoms. (Tr. 267). Dr. Wunder's objective findings are consistent with an ability to perform at least light exertional work. (Tr. 407-16). Dr. Wunder concluded, "I see no reason that she could not perform in light ranges. She could not walk long distances. She should have the opportunity to alternate sitting and standing during the course of the workday. She has no upper extremity restrictions." (Tr. 409). In June 2006, Dr. Fritzhand found that Plaintiff walked with a normal gait and was comfortable in both the supine and sitting positions. She had normal neurological functioning, and no weakness or atrophy. Her ranges of motion were normal, except that she had a minimal degree of forward bending limitation to 85 degrees. She had no signs of nerve root compression, and her sensory and motor functioning were intact. Dr. Fritzhand did not refer to any specific limitation on Plaintiff's work activity. Dr. Fritzhand concluded that she "appears capable of performing activities commensurate with her age and mental status." (Tr. 765-72).

Dr. Wright, moreover, cited no examination findings in support of his opinions, (*see* Tr. 531, 554), a proper consideration under the Regulations. *See* 20 C.F.R. §404.1527(d)(3) and

14

§416.927(d)(3) (the better an explanation a source provides for an opinion, particularly objective medical findings, the more weight the ALJ will give to that opinion).

Rather than crediting Dr. Wright's opinion, the ALJ reasonably placed greater weight on certain non-treating physicians by applying the "specialization" factor permitted by the Regulations. *See* 20 C.F.R. §404.1527(d)(5) and §416.927(d)(3) (more weight is generally placed on the opinion of a specialist about medical issues related to his or her specialty than to the opinion of non-specialist). Dr. Wunder is a physical medicine and rehabilitation specialist; Dr. West is a neurosurgeon and Dr. Fritzhand specializes in occupational medicine. As such, they are specialists, while Dr. Wright was a family medicine physician. *Id.*

Turning to the opinion of Dr. Dornan, the ALJ noted that Dr. Dornan stated that Plaintiff could perform light work activity. (Tr. 528, 551). Dr. Dornan began treating plaintiff in October 2003 and continued treatment through at least October 2006. (Tr. 792-830). In March 2006, and October 2006, Dr. Dornan completed functional capacity questionnaires. (Tr. 786-91). Dr. Dornan opined that Plaintiff could lift light weight and stand no more than one hour before needing to sit; she had no restriction on sitting; a limit on getting frustrated under stress could be overcome with a good support system; and work in a crowded area would trigger anxiety and would not be tolerated. (Id.) Plaintiff argues that the ALJ failed to weigh the opinion of Dr. Dornan under *Wilson*. In determining the restrictions imposed on Plaintiff's RFC, The ALJ also relied on the opinions of Dr. Dornan and noted that his functional capacity assessment was for limited range of light work, which was consistent with that of Dr. Dornan. (Tr. 523, 551). The Commissioner argued that, since the ALJ noted Dr. Dornan's restrictions were consistent with a limited range of light work as he so included in his RFC, the ALJ gave Dr. Dornan's restrictions

15

significant weight. (*See* Doc. 11 at 11.) This court agrees and finds no error in the ALJ's analysis of Dr. Dornan's opinions.

Plaintiff next argues that the ALJ erred by not finding her limited to sedentary work at age fifty and, in turn, by not finding her to be disabled pursuant to Grid Rule 201.14. This argument lacks merit because the ALJ's assessment of Plaintiff's RFC - finding her able to perform a limited range of light work - was supported by substantial evidence, particularly the opinions of Dr. Dornan. As a result, the ALJ was not required to apply Grid Rule 201.14; it applies only to those age fifty who can only perform sedentary work. *See, Wright v. Massanari*, 321 F.3d 611,615 (6th Cir. 2003)(claimant's characteristics must exactly match the criteria in Grid Rules to trigger a disability finding).

Accordingly, Plaintiff's contentions concerning the ALJ's evaluation of the medical source opinions of record as to her physical impairments lack merit.

## II.   MENTAL HEALTH LIMITATIONS

Plaintiff argues in her Third Error that the ALJ erred by rejecting treating psychiatrist Dr. Hackett's opinion. Dr. Hackett has treated Plaintiff since 2001. (Tr. 300, 335-36). He stated in January, 2002 that Plaintiff was employable at that time and hoped to work in the future. (Tr. 308-310). In January 2002, Dr. Hackett reported Plaintiff would have difficulty coping with anxiety, assessing marked limitations interacting with coworkers and the general public, and moderate limitations in completing a work week without psychological symptoms or an undue number of rest periods. Dr. Hackett opined that Plaintiff was "employable." (Tr. 309-10). In March, 2003, Dr. Hackett stated that Plaintiff reported fears about being in public around people.

16

(Tr. 398). Dr. Hackett opined Plaintiff had marked limitations in persisting on tasks and in meeting the mental demands of competitive work. In February 2005, Dr. Hackett reported Plaintiff has symptoms of depression and anxiety with intrusive nightmares of past abuse/trauma. Plaintiff reported medications help with her symptoms. (Tr. 738). Plaintiff also reported hand tremors from her anxiety in 2006. (Tr. 715-727).

It is, of course, the Commissioner's function to weigh the evidence. *Young v. Secretary of Health and Human Services,* 787 F.2d 1064 (6th Cir.), *cert. denied,* 479 U.S. 990 (1986). Social Security matters not uncommonly involve the situation of conflicting medical evidence and the trier of fact has the duty to resolve that conflict. *Cf., Richardson v. Perales,* 402 U.S. at 399; *see also, Mullins v. Secretary of Health and Human Services,* 836 F.2d 980 (6th Cir. 1987).

Plaintiff argues that the ALJ erred when he did not consider Plaintiff's post-traumatic stress disorder or the panic disorder diagnosed by Dr. Hackett. Contrary to Plaintiff's position, ALJ Knapp declined to give Dr. Hackett's "opinion either controlling or deferential weight under the Regulations to the extent that it purports to establish the need for any additional mental functioning restrictions." (Tr. 532, 555). Rather, ALJ Knapp considered Dr. Hackett's opinion as well as the other mental health evidence of record in determining that Plaintiff is limited from having any interpersonal contact with members of the general public; have no greater than occasional contact with co-workers or supervisors; perform other than simple, repetitive tasks; or do other than low stress work activity (i.e., no jobs involving fixed production quotas or otherwise involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). (Tr. 534, 557). ALJ Knapp had an adequate basis for

17

reaching that conclusion. First, Dr. Hackett never opined that Plaintiff was disabled by her alleged mental impairments. Secondly, the ALJ noted that Dr. Hackett provided no corresponding record of objective findings showing a deterioration in Plaintiff's mental functioning since early 2002, when Dr. Hackett stated that she was employable. (Tr. 531, 554). ALJ Knapp's limitations are supported by examining psychologist Dr. Bromberg. In August 2003, Dr. Bromberg diagnosed bipolar disorder and an anxiety disorder. On examination, Dr. Bromberg found that Plaintiff was cooperative and able to relate in an appropriate and coherent manner. Her mood and energy were normal, and she was alert with good concentration and orientation in all spheres. Her insight and judgment were adequate for ordinary daily activities. Dr. Bromberg found Plaintiff's ability to understand and remember were unimpaired, and her ability to relate to others, including fellow workers and supervisors, was only mildly impaired. She had a moderate impairment of her ability to maintain attention and concentration and her ability to cope with the stress of day to day work activity. She had slight or no restriction of her abilities in most areas of work-related mental functioning, with only a moderate restriction of her ability to respond appropriately to work pressure in a usual work setting. (Tr. 417-23).

Finally, ALJ Knapp's conclusion is supported by the opinions of the reviewing mental health experts of record, Drs. Paulucci and Goldsmith and the opinion of consulting psychologist, Dr. Leisgang. (Tr. 529, 552).

Dr. Paulucci reviewed the medical evidence in May 2002. He opined that Plaintiff retained the capacity to perform simple, routine jobs, that involved minimal to no contact with others, no interaction with the general public, and minimum contact with coworkers. Dr. Paulucci concluded that Plaintiff retained the capacity to perform simple tasks in a non-

18

competitive

environment where she could work alone and not have contact with the public. (Tr. 271-88).

In December 2006, Dr. Leisgang, evaluated Plaintiff's mental functioning. Dr. Leisgang reported Plaintiff displayed a flat and depressed affect, and complained of some anxiety. Dr. Leisgang also noted prior instances of abuse and intrusive flashback episodes. Dr. Leisgang diagnosed Plaintiff with bipolar disorder, a panic disorder with agoraphobia, and post-traumatic stress disorder. She assigned Plaintiff a GAF of 49. Dr. Leisgang concluded Plaintiff had moderate to serious limitation of her abilities to interact with others and cope with work stress, and had moderate restrictions of her ability to understand, remember, and follow simple instructions, and maintain adequate levels of attention, concentration, persistence, and pace. (Tr. 861-66). Dr. Goldsmith affirmed Dr. Leisgang's opinion in January 2007. (Tr. 867).

The restrictions the ALJ implemented for simple, repetitive tasks accommodate the "moderate" level restrictions Dr. Leisgang found in the Plaintiff's ability to understand, remember, and follow simple instructions and maintain adequate levels of attention, concentration, persistence and pace. (*See* Tr. 529). The ALJ also included low stress and social functioning restrictions based on Dr. Leisgang's finding of "moderate to serious" limitations in Plaintiff's ability to interact with others and cope with work stress. *Id.*

The ALJ further supported his RFC with the opinion of Dr. Dornan, who stated Plaintiff is able to perform low stress work. (Tr. 788, 791). Progress notes of Plaintiff's counselors at Mental Health and Recovery Services of Warren County show no evidence of any acute psychopathology during either 2005 or 2006. (Tr. 714-41; 831-60). Plaintiff reported to her counselor that she was considering returning to work by April 2005. (Tr. 856). Plaintiff

19

complained of increasing stress in 2006 (Tr. 833), but Plaintiff's symptoms were situational in nature. The ALJ noted when Plaintiff's progress notes are considered together, they are consistent with an ability to perform low-stress work with minimal social interaction. (*See* Tr. 529, 552).

The ALJ further noted that Dr. Leisgang's opinion does not contain sufficient findings to alter the RFC's limitation of low stress work and it did not alter the opinion of consulting psychologist, Dr. Goldsmith. (Id.).

## III.   CREDIBILITY

Plaintiff asserts that the ALJ erred by rejecting her testimony about the severity of her impairments, particularly she argues that there is objective medical evidence to support her subjective complaints. Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination.

The ALJ reasonably found that certain factors undermined Plaintiff's allegations of both physical and mental disabilities. (Tr. 532; 555). The ALJ correctly recognized that when Plaintiff testified at the first hearing, she said she had no panic attacks in six months and at another point, said she had them daily and that they lasted two to three hours. (Id.). The ALJ also correctly noted that even though Plaintiff continued to allege that she has debilitating symptoms of depression and anxiety, progress notes from her counselor indicated that she was considering returning to work in April 2005 and again in March 2006. (Tr. 719, 737, 839 and 856). Medical records also show that Plaintiff has continued to experience improvement regarding her back problem. Dr. Fritzhand's June 23, 2006, report shows substantial resolution

20

of her prior vertebrogenic disorder. (765-72). Finally, the ALJ considered Plaintiff's daily activities. Plaintiff testified at both hearings that she maintains many normal daily activities including shopping and driving. (Tr. 893-95). Plaintiff also told Dr. Leisgang that she assisted with light household chores, watched television, and listened to music (Tr. 862), which undermine her subjective complaints of disability. "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)(internal quotation marks omitted). As long as substantial evidence supports the Commissioner's decision, we must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## IV. THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

Plaintiff next argues that the ALJ erred vocationally in his hypothetical question to the VE at step 5 once the ALJ found that she could not do her past work. (*See*, Doc. 6 at 10). Plaintiff contends that the ALJ's hypothetical question to the vocational expert failed to include other functional limitations from her panic disorder with the agoraphobia and problems leaving the house daily to work and also did not consider what is stressful to her as an individual. (Id.). Nothing in the medical record reflects that Plaintiff requires more limitations that those found by

the ALJ. In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234-35 (6th Cir. 1993).

To determine whether work exists in significant numbers, courts have adopted the standards set forth in *Hall v. Bowen,* 837 F.2d 272 (6th Cir. 1988). In *Hall,* the court said that "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Id.* at 275. A judge should view any number provided in the context of the particular case and should consider many criteria, including but not limited to the level of claimant's disability, the reliability of vocational expert and claimant's testimony, the distance the claimant is capable of traveling, the isolated nature of the jobs, and so on. *Id.* "The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

Given this statutory standard, the ALJ did not err by relying on the vocational expert's testimony concerning restrictions supported by the record. The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift and carry up to ten pounds frequently and twenty pounds occasionally. The hypothetical individual can stand and/or walk up to thirty minutes at a time and up to six hours total during an eight-hour workday. Lastly, the hypothetical individual can occasionally climb stairs, crawl, crouch, stoop, or kneel; no climbing of ladders or scaffolds; no working at unprotected heights or around moving machinery; no contact with the general public; no more than occasional contact with co-workers and supervisors; no more than simple, repetitive tasks; and no more than low stress work, with no fixed production quotas, above average pressure for production, work that is other than

22

routine in nature or work that is hazardous. (Tr. 898). The VE responded that an individual of Plaintiff's age, education, and work history with those limitations could perform approximately 18,000 unskilled light jobs in the regional economy, such as: mail clerk (600 positions), photocopy machine operator (1,500 positions), and small parts assembler (800 positions). At the sedentary level, there would be approximately 3,100 jobs in the regional economy, such as: dental inspector (250 positions), microfilm document preparer (500 positions) and type copy examiners (500 positions). (Tr. 898-99).

Plaintiff further contends that the VE testified that some of the jobs were only 37 ½ hours a week. (Tr. 900). Plaintiff argues this does not comply with Ruling 96-8p. (*See* Doc. 6 at 10). The court must agree with the Commissioner. As the Commissioner correctly noted counsel for Plaintiff asked the VE whether the jobs he identified were for full-time employment, and he replied, "They are for full-time employment, yes." *Id.* The VE continued "[Full time] would be defined as typically 40 hours a week. You can consider up to 37 ½ hours a week as full time." *Id.* Therefore, the VE's testimony characterized full-time work as "typically 40 hours a week," consistent with Ruling 96-8p.

Thus, the ALJ's decision that Plaintiff could perform a significant number of jobs is supported by substantial evidence and does not reflect a legal error that would require remand.

## CONCLUSION

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the

23

fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to

direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

*LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting,*

*NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's

decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, we recommend that his

decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

DATE *March 24, 2009*

Timothy S. Hogan
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION**

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), ( C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

J:\Batten\R&R.08-109.wpd